[Civ. No. 6968. First Appellate Court, Division One.—January 30, 1930.]

MARGARET SCHOMAKER, Appellant, v. J. B. PETERSEN et al., Respondents.

560

Cross & Brandt for Appellant.

Dunn, White & Aiken, Carlos G. White and Edward J. Smith for Respondents.

JOHNSON, J., *pro tem.*—This is an action based on a promissory note executed to the plaintiff by the defendants J. B. Petersen and S. Matthesen, together with their respective wives, and at all times after its delivery kept by plaintiff in her own exclusive possession.

The question presented on this appeal by plaintiff concerns itself with the authority of a real estate agent, who had negotiated the transaction giving rise to the note, to

bind the payee by receipt of a payment procured on such· agent's own solicitation, and misappropriated by him.

The plaintiff, Mrs. Schomaker, acting through E. B. Field, doing a brokerage business in Oakland under the trade name of E. B. Field Co., sold to Messrs. Petersen and Matthesen a lot of land, taking as part payment a promissory note for $1900, executed by all the defendants and secured by their deed of trust. The sale was closed by an employee of Field, named Fred Hauschildt; and the note, with the deed of trust, was duly delivered to the plaintiff and has been retained ever since in her possession.

The note, which was dated October 29, 1923, was made payable one year thereafter, and bore interest at the rate of seven per cent per annum, payable monthly, and compounding if not so paid. The trustee named in the deed of trust was the Oakland Title Insurance & Guarantee Company; and the instrument was recorded November 14, 1923.

Mrs. Schomaker, who is described by Mr. Sevier, deputy district attorney of Alameda County, as an ignorant woman, appears to have had no business experience; and, moreover, she was occupied with the care of a helpless son. A period of six months having gone by without any interest being paid, she informed Hauschildt of the default. He told her that he would procure the interest money; and soon thereafter, on March 3, 1924, he obtained from Petersen a check for $66.60, which Petersen drew in favor of Hauschildt, and the latter, after giving Petersen a receipt for interest from October 25, 1923, to April 25, 1924, sent his own personal check for $66 to Mrs. Schomaker.

On August 15, 1924, Hauschildt, acting on his own initiative, procured from Matthesen a check for $66 in Hauschildt's favor, receipting for the amount as ''six months interest on loan of $1,900 to Margaret Schomaker from March 29, 1924, to August 29, 1924.'' Mrs. Schomaker had no knowledge of this payment, nor did she receive any of the proceeds of the check.

At about this time Hauschildt chanced to see Mrs. Schomaker and stated to her that the makers of the note were getting ready to pay her, whereupon she remarked that ''that was all right.'' She heard no more of the matter until the following September, at which time Hauschildt told her that the makers were in position to pay her, but that she

would have to sign a reconveyance; and he asked her if she would do so. She replied that she would, if she had to sign in order to get her money; and he then said that he would mail the paper to her for signature.

Shortly thereafter Hauschildt sent to plaintiff by mail a form which in express terms directed the Oakland Title Insurance and Guarantee Co. to execute and deliver a reconveyance of the property described in the deed of trust executed by the defendants. Nothing was mentioned in these instructions concerning any collection to be made, nor was delivery of the reconveyance made conditional upon payment of the note. But in his letter to Mrs. Schomaker, Hauschildt said: ''If you will kindly sign this and mail same back to me, I will see that the money is deposited in the Oakland Title Insurance and Guarantee Co. and mailed to you.'' Mrs. Schomaker accordingly signed the form, and mailed it back to Field's office in an envelope which came with the letter to her. The instructions were then delivered, presumably by Hauschildt, to the trustee; and on November 12, 1924, the trustee, without inquiring as to payment of the indebtedness, had a deed of reconveyance signed by its officers, using one of its ordinary forms, which recited payment of the indebtedness in full. This document then passed, without any direction from Mrs. Schomaker, into the possession of Hauschildt in some way not disclosed in the evidence. It was not recorded until February 25, 1925.

Before procuring from Mrs. Schomaker the instructions to the trustee, Hauschildt, by false representations, had already induced Petersen and Matthesen to pay to him $1815 of the principal amount of the indebtedness. In September he represented to Petersen that Mrs. Schomaker was greatly in need of money; and that if Petersen could help her, she would deduct $50 from the amount owing. Petersen, without any inquiry concerning either the possession of the note or Hauschildt's authority to collect the indebtedness, gave Hauschildt a check on September 19, 1924, for $890, and had Matthesen, on October 22, 1924, give Matthesen's check to Hauschildt for $925. These checks were both drawn in favor of Hauschildt, and were cashed by him. At the time of the delivery of Petersen's check, Hauschildt promised that he would get a reconveyance on payment of the residue; and when he received Matthesen's check, he said the recon-

veyance would be sent in a few days. After procuring the reconveyance from the trustee, Hauschildt gave it to Petersen on November 14, 1924, and at the same time demanded and received from Petersen a check for $33, which Hauschildt stated was for interest and the expense incident to execution of the reconveyance. This amount, together with the moneys previously collected by Hauschildt, aggregated $1980.60, all of which Hauschildt appropriated to his own use, with the exception of the item of $66 sent in March, 1924, to Mrs. Schomaker as a payment of interest for the first six months.

After Mrs. Schomaker had signed the instructions to the trustee she heard nothing further from anyone, and waited until March, 1925. At that time she telephoned to Hauschildt, who told her that nothing had been paid, that failure to make payment was mere carelessness, and that the money was perfectly safe and the security ample. Thus reassured, and her attention being centered on her helpless son, Mrs. Schomaker let matters drift until the following October, at which time she again made inquiry of Hauschildt, and was told as before that nothing had yet been paid. So matters went on with repeated inquiries and reassurances for about a year until October, 1926. Being then in need of money, Mrs. Schomaker communicated with a friend, who suggested that she make inquiry of the Oakland Title Insurance and Guarantee Co. Upon doing so, Mrs. Schomaker learned that a deed of reconveyance had been made and recorded long before; and she was advised to see Mr. Field. This she did, and then sought out Mr. Petersen also, whom she had never met previously; and from him learned that payments had been made to Hauschildt.

Hauschildt had been discharged from Field's employ on September 1, 1926, and thereupon became connected with the real estate office of Tucker-McElhinney Co. Upon being informed of the misconduct of Hauschildt, Field brought the matter to the attention of Mr. Sevier, deputy district attorney, who issued a citation requiring Hauschildt's attendance at the district attorney's office. Two meetings were held. Besides Hauschildt and Sevier, there were present at both meetings Field, Petersen, Matthesen and Mrs. Schomaker; and at the second meeting there were in addition Edward J. Smith, attorney for Petersen and Matthe-

sen, and Warren Tucker, Hauschildt's new employer. Hauschildt admitted his guilt, and at the first meeting it was suggested by Mr. Sevier that the conference be continued for a week to see what could be done by Hauschildt about making reparation. At the next meeting Mr. Tucker, stating that Hauschildt had good earning capacity, proposed that after allowing Hauschildt a limited sum for living expenses, he himself would arrange to have the residue of Hauschildt's earnings applied in a way to rectify the wrong.

Petersen and Matthesen, claiming through their attorney to be discharged of all liability, expressed utter indifference as to the whole proceeding. Mrs. Schomaker had not an attorney present, and no one explained to her that question had been raised as to Hauschildt's agency. She sat mute, and at times in tears, throughout the discussion, until she was asked whether the arrangement proposed was agreeable to her. To this question she replied that as long as she got her money, she did not care where it came from. The conference ended after a suggestion had been made that Tucker should make payments from Hauschildt's earnings to Field, and Field should pay the amounts as received to Mrs. Schomaker.

Thereafter, on March 3, 1927, Hauschildt brought Mrs. Schomaker a check of Tucker-McElhinney Co. for $100, and on June 30th he brought $100 in currency. Subsequently Hauschildt absconded and Mrs. Schomaker received nothing more from any source.

On October 5th this action was instituted against the defendants to recover on their promissory note. In their answer the defendants allege that Mrs. Schomaker held forth Hauschildt and Field as her agents, authorized to receive payment, and that believing them to possess such authority, the defendants had paid to Hauschildt for plaintiff the full sum demanded in satisfaction of the note, and had received from Hauschildt deed of reconveyance. Defendants further averred that they would not have paid Hauschildt except for the fact that they had made previous payments to him which plaintiff had received and accepted, and that plaintiff had caused the deed of reconveyance to be placed in Hauschildt's hands for the purpose of effecting collection. Upon these grounds defendants charged that plaintiff was estopped to deny the agency of "Fred Hauschildt and/or

E. B. Field Co." to make collection for her. Defendants pleaded in addition that plaintiff had ratified the acts of the defendants in making the payments as they had, and "agreed to look solely to said Fred Hauschildt and/or E. B. Field Co. as her agents therefor"; and that in March and June, 1927, she had received from Hauschildt payments of principal and interest on account.

The case was tried without a jury, and the court, deciding in favor of defendants, made a general finding that all the allegations of the answer were true. Owing to the ambiguous character of the averments of agency ascribed to "Fred Hauschildt and/or E. B. Field Co.," it is not altogether certain whether the court regarded only an undetermined one of the two persons, Hauschildt and Field, as the agent of Mrs. Schomaker to make collection, or both as vested with equal authority. As a matter of fact, Field knew nothing of the collection until after Mrs. Schomaker had learned of it from Petersen, and had then informed Field. However, we will assume that the court drew from the evidence the inference that Hauschildt and Field were authorized to bind Mrs. Schomaker by collections made by either independently, or by both in concert.

The question thus becomes primarily one of law as to the sufficiency of the evidence to establish such agency. Our courts have not had occasion hitherto to promulgate a rule on this subject; but the principles applicable have become so firmly established as to make our way plain.

It is to be borne in mind that at no time after the delivery of the note and the deed of trust to Mrs. Schomaker in November, 1923, did either Hauschildt or Field have possession of either instrument. And the deed of reconveyance was not exhibited by Hauschildt or delivered to Petersen until the last payment of $33 was made.

"Whoever insists," says Mechem in his treatise on Agency, "that he has discharged an admitted debt, by paying it to someone other than the creditor himself, has ordinarily the burden of proving that the person to whom he paid it was authorized by the creditor to receive the payment." (1 Mechem on Agency, 2d ed., p. 667.)

While authority may arise by implication, still agency is not lightly to be inferred. And in the matter of a loan, "the mere fact that the agent was employed to make the

loan or negotiate the contract or draft the securities upon which the money is payable, will not, as of course, confer upon him the incidental authority to receive a payment which may become due upon such contract. If the authority goes no further, the agent's power will be exhausted when the loan is made or the contract is negotiated." (1 Mechem on Agency, 2d ed., p. 669.)

If, however, the agent who negotiated the transaction is allowed to retain possession and control of the securities, his authority to collect is implied under what is sometimes called "the scrivener's rule."

"The presumption in these cases is founded upon the negotiating agent's possession of the securities; it does not arise if the securities are not left in the agent's possession, and if once created, it ceases when the securities are withdrawn by the principal. It is incumbent, therefore, upon the debtor to assure himself on each occasion when a payment is made that they still continue in the agent's possession, for if they have been withdrawn, the payment will not bind the principal, unless actual authority can be shown or his conduct has been such as to estop him to deny the agency." (1 Mechem on Agency, 2d ed., p. 672.)

The leading American case on the subject is *Williams* v. *Walker*, 2 Sand. Ch. (N. Y.) 325, where the English authorities are gathered and reviewed; and the principles there applied are discussed at length and followed in *Smith* v. *Kidd*, 68 N. Y. 130 [23 Am. Rep. 157]. The current of authority runs steadily in one direction; and a study of the numerous decisions shows concurrence in the following rules:

1. A borrower making payment to a person other than the lender himself does so at his peril, and has the burden of showing the recipient of the money to have been an authorized agent of the lender for collection.

2. Negotiation of the loan by a person acting therein as agent of the lender does not operate to invest that agent with authority to receive payment, either of interest or principal.

3. Authority to receive payments of interest does not carry with it authority to collect the principal.

4. If, however, the agent who negotiated the loan is entrusted with possession and control of the securities, then

in the absence of notice to the contrary, the implication arises that he possesses authority to collect principal as well as interest while he is known to retain control of the securities, but no longer.

5. To support the implication of authority to collect under the scrivener's rule, there must be the union of two elements —agency in making the loan and known possession of the *indicia* of indebtedness intentionally left in the negotiating agent's custody.

6. To justify payment to a custodian of the securities, the borrower must have knowledge of the fact of possession at the time of each payment. Mere possession alone does not suffice. It is the possession, known at the time, which gives the appearance of authority. Neither possession existing at the time, if unknown to the borrower, nor possession known to exist before or after, but not at the time of, payment will give rise to any implication of authority. Absence of the securities on the occasion of any payment implies absence of authority at that time.

7. Authority inferred from the known possession of securities is at most authority to collect interest and principal as they fall due. No authority arises by implication to receive the principal before maturity. Nor even when there is express authority to collect, is the agent authorized to receive payment before it is due.

For verification of the principles embodied in the rules here formulated, reference may be made to *Williams* v. *Walker,* 2 Sand. Ch. (N. Y.) 325; *Smith* v. *Kidd,* 68 N. Y. 130 [23 Am. Rep. 157]; 2 C. J. 619–622; 21 R. C. L. 868, 869; 1 Mechem on Agency, 2d ed., pp. 669–672; 2 Jones on Mortgages, 8th ed., secs. 1231, 1232, 1235.

Hauschildt was expressly authorized to collect the interest which had accrued for the first six months. That collection was made, and the money transmitted to Mrs. Schomaker. He had no express authority to make any other collection, nor from the circumstances does any implication of authority arise. He lacked at all times possession of the *indicia* of the indebtedness, solicited and obtained payment of the principal before it was due, and to induce such payment offered a reduction of the principal. These circumstances all put the defendants on inquiry as to Haus-

childt's authority; and the payments other than the first payment of interest were made at defendant's peril.

Express authority was equally necessary for any reduction of principal and for acceptance of principal prior to maturity. Defendants make no contention of any express authority; and there is likewise an insufficiency of evidence to show any implied authority to collect any of the moneys here in question.

Nor is the situation changed by reason of the ultimate delivery of the deed of reconveyance. This was not delivered until November 14, 1924, at which time defendants made their last payment amounting to $33. Even when a trustee releases a deed of trust and receives payment of the amount of the debt, without actual authority and without producing the securities, the party paying is charged with notice of the lack of authority in the trustee. (*Fortune* v. *Stockton*, 182 Ill. 454, 462 [55 N. E. 367]; *Wynn* v. *Grant*, 166 N. C. 39, 52 [81 S. E. 949]; *Cummings* v. *Hurd*, 49 Mo. App. 139, 147 [55 N. E. 367].)

The plaintiff in no way held out Hauschildt to the defendants as her agent for the collection of the principal. And even habitual payment of interest to an agent, who in turn makes remittance to the creditor, does not establish his authority to receive any part of the principal. Nor does it raise any estoppel against the creditor. (*Dorman* v. *West Jersey T. & G. Co.*, 92 N. J. L. 487, 489 [105 Atl. 195].) There was nothing in the plaintiff's conduct calculated to mislead the defendants, or to make it appear that Hauschildt had the authority which he assumed. The defendants placed their trust and confidence entirely in the assertions of Hauschildt himself, and it was by him that they were deceived. If they had taken the precaution of following the general custom and demanding surrender of the securities as a condition of payment of the principal, this litigation would probably have been avoided. In *Smith* v. *Kidd*, 68 N. Y. 130, 141, the court says, quoting from *Henn* v. *Conisby*, 1 Ch. Cas. (Eng.) 93: "The circumstance of the creditor keeping the security is conclusive. No man would pay the money due on a mortgage or bond without having the security given up. The debtor's payment to the scrivener without taking up his security was an evidence that he trusted the scrivener more than the creditor did, who always

kept the security.' Any other principle would be dangerous in the extreme.''

This case differs from *Quinn* v. *Dresbach,* 75 Cal. 159 [7 Am. St. Rep. 138, 16 Pac. 762], on which defendants lay stress, in that there the creditor accepted several payments of interest and also payments of part of the principal made through his attorney; and the acceptance of principal so paid without repudiation of agency was regarded as an indication of authority sufficient to justify the debtor in paying the balance of the principal through the same agency. In the present case the only payment by defendants which the plaintiff received through Hauschildt was the one payment of interest; and authority to collect interest creates no ostensible authority to collect principal in the absence of the securities, especially when payment is made before maturity and in a reduced amount.

As there is nothing in the evidence to create an estoppel against the plaintiff, so, also, the evidence fails to show ratification of Hauschildt's unauthorized acts. ■ For purposes of ratification there must be ''confirmatory conduct, or at least conduct inconsistent with disapproval. Facts are not to be stretched, or ambiguous, inconclusive or independent acts made the basis of a ratification.'' (1 Mechem on Agency, 2d ed., p. 348.) It is contended by defendants that the acceptance by plaintiff of two payments of $100 each after the meetings at the district attorney's office operated as ratification of Hauschildt's assumed agency. Ratification rests, however, upon assent; and to be binding it must be made with full knowledge of all the facts necessary to an intelligent exercise of judgment. An intention to confirm, when implied from conduct, must be exhibited by acts inconsistent with any other hypothesis. (2 C. J. 492; *Culver* v. *Nichols,* 140 Md. 448, 453 [117 Atl. 873]; *Ballard* v. *Nye,* 138 Cal. 588, 597 [72 Pac. 156].)

■ It does not appear from the evidence that Hauschildt represented to Petersen or Matthesen that he had any real authority to receive the money for Mrs. Schomaker. His statement to Petersen was that Mrs. Schomaker needed the money, and if Petersen would help her by payment in advance of maturity, she would deduct $50 from the amount owing. It was on the strength of this statement that Petersen and Matthesen delivered to Hauschildt their checks

drawn to his order. One might infer that they trusted him as their own messenger. These were material facts for Mrs. Schomaker to know; but the evidence does not bring knowledge of such facts home to her at the time when she received the two installments from Hauschildt. And ratification is effectually implied only in respect of an act done by a person professedly acting as the agent of the party sought to be charged as principal. (*Pacific B. C. & F. Co.* v. *Bleakmore,* 81 Cal. App. 659, 665 [254 Pac. 618]; *Puget Sound L. Co.* v. *Krug,* 89 Cal. 237, 243 [26 Pac. 902].) Moreover, in receiving those payments, Mrs. Schomaker was not accepting any benefits of Hauschildt's corrupt acts. There were no benefits for her to accept. Hauschildt had maneuvered so as to get the debtors' money for himself and had squandered it. The case is not one where an agent abused or exceeded an authority conferred. There was utter want of authority; and in such case ratification is less readily inferred. (*John A. Eck Co.* v. *Coachella V. O. G. Assn.,* 102 Cal. App. 1 [282 Pac. 408].) Whatever reparation Hauschildt made was a benefit to the debtors whose trust he had betrayed. We discover nothing in the occurrences at the district attorney's office indicating confirmation or adoption of Hauschildt's actions; and when Mrs. Schomaker was asked whether Mr. Tucker's proposal looking to reparation by Hauschildt was agreeable to her, her answer was that so long as she got her money she did not care where it came from. This assuredly was not a consent to look to Hauschildt instead of her real debtors. Perhaps if she had been represented by an attorney, he might have suggested for form's sake that Hauschildt make his payments through Petersen and Matthesen; but the mechanics do not change the essential character of the arrangement. What Hauschildt paid, he paid not as Mrs. Schomaker's agent, but as the individual who had defrauded Petersen and Matthesen; and the amounts paid redounded to their benefit. It was the part of common sense to take whatever could be obtained in the way of redress; and the installments paid to Mrs. Schomaker should, in law, not be regarded otherwise than if Hauschildt had paid the money to Petersen and Matthesen, and they had transmitted it to Mrs. Schomaker to apply on the note.

■ We think it quite clear that Mrs. Schomaker had no knowledge of her rights until after Hauschildt had absconded; and it is of the essence of ratification that what is done shall be done advisedly and with full knowledge of the party's rights. (*Brown* v. *Rouse,* 104 Cal. 672, 676 [38 Pac. 507]; *King* v. *Lagrange,* 50 Cal. 328, 332.)

■ The mere willingness to receive and apply on the note what might become available from Hauschildt's earnings was in no sense equivalent to substituting Hauschildt as the debtor in place of Petersen and Matthesen. Mrs. Schomaker was neither reaping the fruits of Hauschildt's wrongful acts nor adopting them as acts done on her account. The money paid was not part of the proceeds realized by Hauschildt, nor was it accepted on the basis of any valid exercise of agency. Remedy against a party legally liable is not forfeited by efforts to effect a friendly settlement or to avoid needless loss. (2 C. J. 490, sec. 110; *Crute* v. *Burch,* 154 Mo. App. 480 [135 S. W. 1004]; *Gilman Linseed Oil Co.* v. *Norton,* 89 Iowa, 434 [48 Am. St. Rep. 400, 56 N. W. 663].)

Hauschildt's payments of $200 from his earnings served to mitigate the defendants' loss to that extent, but did not absolve defendants of liability for the residue.

The evidence, being insufficient to show either agency, ratification or estoppel, does not afford justification for the findings; and hence the judgment in favor of defendants is without legal support.

The judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 28, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 31, 1930.

Seawell, J., Preston, J., and Langdon, J., dissented.