## Boston Store of Chicago, Appellee, v. Hartford Accident & Indemnity Company, Appellant.

### Gen. No. 27,820.

1. INSURANCE—*general insurance broker as agent of insurer.* Notice of an accident insured against by defendant is binding on defendant though given by the assured to a broker and not directly to defendant where such broker had acted as intermediary between the assured and defendant in negotiating for such insurance and the evidence shows that it was the general custom of business for the assured and insurer to act through such broker in regard to any matters which arose under the policy, and for the assured to notify such broker of accidents and for the broker to notify the company, and for the company to notify the assured through such broker of any matters which it was required to give the assured notice of, and that such broker had implied power to bind the company in other respects, even though such broker is not a general agent of the insurance company, and notwithstand-

Boston Store v. Hartford Acc. & Indem. Co., 227 Ill. App. 192.

ing the broker's failure to notify defendant for a year after it had notice from assured.

2. INSURANCE—*waiver by of timely notice of accident.* Delay in giving an insurance company notice of the occurrence of an accident covered by a policy issued by such company is waived by the company where, upon first receiving notice of the accident, long after it should have been given, the company did not repudiate liability but sought further information which was given, and thereafter correspondence was had between the company and the assured in the course of which the company was repeatedly notified that the case could be settled for a reasonable sum if prompt action be taken, and where the company, although requested to do so, neglected either to accept or disclaim liability under the policy for six weeks after notice and until settlement was no longer possible.

3. APPEAL AND ERROR—*waiver of error by failure to object in trial court.* An objection that a judgment in assumpsit upon a policy of a liability insurance is greater than the amount claimed in plaintiff's *ad damnum* clause will not be considered on appeal where it was not made in the trial court.

Appeal by defendant from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed December 5, 1922. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** In an action in assumpsit, based upon a policy of liability insurance issued by defendant to plaintiff, and tried without a jury, the court on February 4, 1922, found the issues for plaintiff, assessed its damages at the sum of $3,304.25, and entered judgment against defendant on the finding. Defendant appealed.

By the terms of the policy, as originally issued, the defendant agrees to indemnify the employer (plaintiff) for one year from February 16, 1915, against loss by reason of the liability imposed upon it by law for damages on account of bodily injuries sustained by certain of its employees (chauffeurs and chauffeurs' helpers) during said period, to investigate cases and settle claims and defend suits against the employer, and to pay costs and expenses, etc. The policy con-

194     APPELLATE COURTS OF ILLINOIS.

Boston Store v. Hartford Acc. & Indem. Co., 227 Ill. App. 192.

·tains the usual conditions, among which are, that, upon the occurrence of an accident covered by the policy, the employer shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company at its home office, or to one of its duly authorized agents; that, if any claim is made on account of such accident, the employer shall give like notice thereof with full particulars, and, if thereafter suit or other proceedings are instituted against it, shall immediately forward to the company every summons or other process served upon it; that the premium is subject to adjustment at the termination of the policy, when the employer shall furnish to the company a written statement of the remuneration earned by the employees; and that, if the premium computed at the rates specified exceeds the deposit premium, the employer shall pay an additional amount, and, if less, the company shall return to the employer the unearned premium.

Plaintiff's declaration consists of one special count. After setting forth *in hæc verba* the policy, dated February 6, 1915, plaintiff averred, in substance, that on April 6, 1915, one Stanley Gurga, then employed by it as a chauffeur's helper, sustained bodily injuries while getting off of one of its auto-trucks, for which injuries it became liable under the law for damages; that plaintiff immediately gave written notice of the accident, with the fullest information obtainable at the time, to the duly authorized agent of the defendant, A. F. Shaw & Company, a corporation (hereinafter referred to as the Shaw Co.); that subsequently Gurga sued plaintiff to recover damages for his injuries, and the mother of Gurga also sued plaintiff for loss of the services of her son; and that on *August 15, 1916*, the Shaw Co. gave written notice of Gurga's accident to defendant. Plaintiff then set forth with considerable particularity certain subsequent negotia-

tions with defendant, through its attorney and authorized agent, George H. Maloney, concerning defendant's liability and the settlement of the claims of Gurga and his mother, the final disclaimer of liability under the policy by defendant on September 26, 1916, and the subsequent settlement on March 26, 1919, by plaintiff of said claims for $2,500, and the payment by it of costs and expenses amounting to $600. Plaintiff further averred that it had sustained loss and damage in said amounts by reason of the Gurga accident, and that defendant, although liable, had refused to pay the same or any part thereof. Although plaintiff claimed interest on said sums from March 26, 1919, the *ad damnum* in the declaration was placed at $3,100.

Defendant filed a plea of the general issue, supported by the affidavit of said George H. Maloney, and also gave notice that at the trial it would rely upon certain special matters of defense, among which was that at the time of the accident a certain indorsement constituted a part of the policy, and provided that said policy covered ''chauffeurs only,'' that chauffeurs' helpers were covered under plaintiff's general liability policy in another company, and that any adjustment of premiums made at the expiration of the policy year should be on the wages of chauffeurs only; and that plaintiff, at the time of the accident, did not give immediate written notice thereof, with the fullest information obtainable at the time, *to any one of its duly authorized agents.*

On the trial it was not disputed that Gurga was a chauffeur's helper employed by plaintiff; that while engaged in his occupation on April 6, 1915, he sustained serious injuries while jumping off an auto-truck belonging to plaintiff; that at the time of the accident plaintiff, in addition to the policy sued upon, carried a liability policy in the General Accident, Fire and Liability Assurance Corporation, insuring plain-

196     APPELLATE COURTS OF ILLINOIS.

Boston Store v. Hartford Acc. & .Indem. Co., 227 Ill. App. 192.

tiff against loss for damages on account of bodily in-
juries sustained by any person by reason of the use of
certain automobiles enumerated in the policy, and also
carried a general liability policy in the Union Casualty
Insurance Company; and that plaintiff, through its at-
torney, after it had received defendant's letter of Sep-
tember 26, 1916, settled the two pending lawsuits
brought against it by Gurga and his mother for $2,500,
on March 26, 1919, and also expended about $600 in
costs and attorney's fees in connection therewith.

The evidence introduced on the trial also disclosed,
in substance, the following facts: One L. B. Vastine
was one of the general agents of the defendant com-
pany in Chicago. A. F. Shaw & Company, a corpora-
tion, were insurance brokers in Chicago. Charles
Weisz was the secretary of the Shaw Co., and through
his efforts the Shaw Co. had procured for plaintiff
the policy sued upon in the defendant company and
also the policy in the General Accident, etc., Co. The
Shaw Co. had handled plaintiff's insurance for more
than twenty years, and was, through Weisz, in con-
stant touch with plaintiff regarding its insurance mat-
ters. Whenever plaintiff desired policies of insurance
it would advise the Shaw Co. and the latter would
procure them and deliver them to plaintiff. Plaintiff
would be billed for the premiums by the Shaw Co.,
on its billheads, and would pay the bills to the Shaw
Co. and the checks would be deposited in the general
bank account of the Shaw Co., which in turn would
pay the various insuring companies, including defend-
ant, through the clearing house system of the com-
panies. The Shaw Co. had a running account with
the defendant company, and in all business placed
with it the general agents of the defendant company
would allow the Shaw Co. a certain portion of their
general agents' commission. Whenever an accident
would occur in plaintiff's business, notice of the ac-
cident would be given to the Shaw Co., and it in turn

would forward the notice to the proper company. If any difficulty arose over a settlement, Mr. Weisz would usually investigate the matter and confer with the company carrying the policy. Whenever plaintiff desired any modifications to be made in, or indorsements on, its policies it would write the Shaw Co. or confer with Weisz. Whenever the defendant company desired to take up any matters concerning the policy it had written for plaintiff, such as coverage, policy conditions, differences as to premiums or adjustments, it communicated with the Shaw Co. It had no direct dealings with plaintiff. The Shaw Co. had a letter on file from the general agents of the defendant company that if it received an order for insurance after defendant's closing hours, or before a holiday, it would be permitted to make the policy effective as of the next business day.

It further appears, in substance, that in the latter part of March, 1915, H. L. Kavanagh, a general accountant for plaintiff and in charge of its insurance business, requested Mr. Weisz of the Shaw Co., on one of his visits to plaintiff's store, to procure an indorsement on the policy sued upon *excluding* chauffeurs' helpers; that he explained to Weisz that plaintiff carried another policy in another company which covered the drivers of wagons, that each wagon had a helper but that such helpers often were transferred to automobiles covered by the policy sued upon, that by said policy it was necessary for plaintiff to submit a pay roll of the wages of the wagon boys who acted as helpers on the automobiles, which was a difficult matter as the boys were shifted back and forth and it was hard to determine when they were wagon boys and when chauffeurs' helpers, and that he thought said other policy sufficiently covered chauffeurs' helpers. Thereupon the Shaw Co., by Weisz, wrote to Mr. Vastine, general agent of defendant company, explaining matters, and requesting an indorsement for

198 ' Appellate Courts of Illinois.

Boston Store v. Hartford Acc. & Indem. Co., 227 Ill. App. 192.

said policy limiting the coverage to chauffeurs, and saying that "this will mean that when the pay roll is made up the wages of chauffeurs only will be taken into consideration and the wages of chauffeurs' helpers will be excluded," and further saying that "if such indorsement is forwarded to us we will see that it is properly attached to the policy." In due course such an indorsement was executed by Vastine and forwarded to the Shaw Co., and thereafter Weisz handed said indorsement to Kavanagh at plaintiff's store. At that time Kavanagh told Weisz that he (Kavanagh) had made an error in ordering the indorsement and that he had done so under the impression that chauffeurs' helpers were covered under said other policy, which he had since ascertained was not the case, and he requested him to return the indorsement to defendant company and have it voided *from the date of issue.* Weisz said he would comply with the request. The evidence does not disclose the exact day that this interview between Weisz and Kavanagh occurred. Said indorsement never was accepted by plaintiff. On April 9, 1915, the Shaw Co., per Weisz, wrote Vastine, explaining plaintiff's change of mind and requesting that said indorsement be voided from date of issue, and on the same day Vastine wrote the Shaw Co., in reply, to the effect that said indorsement had been voided and that the policy stood as originally written. In the meantime, on April 6, the accident to Gurga occurred. Plaintiff on the following day notified the Shaw Co. of the accident, giving a written report thereof, made out on a blank form furnished by defendant company. The Shaw Co., by inadvertence, sent the notice to the General Accident Co. and not to the defendant company. The General Accident Co. acknowledged receipt of the notice and proceeded to investigate the case. Subsequently Gurga engaged an attorney, named Waring, to pros-

ecute his claim.  Waring communicated with plaintiff and was referred by it to the Shaw Co., who in turn referred the matter to an attorney of the General Accident Co.  Negotiations were entered into between Waring, his client and said attorney for a settlement on the basis of $1,300.  Before the proposed settlement was consummated, said attorney for the General Accident Co. concluded that that company's policy did not cover the accident, and this information was communicated to the Shaw Co., which immediately, on August 15, 1916, and for the first time, notified the defendant company of the accident, and inclosed the report thereof which it had received from plaintiff on April 7, 1915.  In the letter which accompanied the notice, the Shaw Co. mentioned its inadvertence in sending said notice to the General Accident Co., the investigation that company had made and its conclusion that its policy did not cover the accident, and the fact that the case had been well handled and was in a condition to be settled advantageously.  The defendant company did not then repudiate liability on its part, but on August 25, 1916, its attorney and authorized agent, Maloney, wrote to the Shaw Co., expressing surprise that the defendant company had not previously been notified of the accident, calling attention to the letter of the Shaw Co. to Vastine of April 9, 1915, regarding voiding said indorsement, and asking for further information.  On August 30, 1916, the Shaw Co. wrote Maloney giving full information and full explanations.  About this time Maloney was several times advised that the case could be settled for $1,300, and that if not settled shortly the opportunity of making such a settlement might be lost.  Maloney admitted on the stand, in substance, that prior to September 1 he was advised that a settlement could be made for $1,300, and was several times urged that defendant company either accept or disclaim liability under the policy, so that, if disclaimed, plaintiff could

itself make such settlement. Maloney did not definitely act until September 26, 1916, when he, on defendant's behalf, wrote plaintiff regarding the Gurga case, as follows: "We had no advices concerning the occurrence until August 16, 1916. We find that no policy issued by us to you, or under which we could be held responsible in any event by its terms, covered your chauffeurs' helpers on April 6, 1915. Had any such policy been in force on that date the failure to give us prompt notice of the accident, in violation of the terms of the policy contract would absolve us from liability thereunder. We, therefore,  *  *  *  disclaim any liability to insure you or indemnify you against loss growing out of the accident and injuries referred to." Shortly after the receipt of this letter plaintiff endeavored to settle the case for the sum mentioned but Gurga refused, discharged Waring, the attorney, and placed the matter in the hands of another attorney. Subsequently, in March, 1919, the settlement for $2,500, as above mentioned, was made by plaintiff.

WILKERSON, CASSELS, POTTER & GILBERT, for appellant; RALPH F. POTTER and KENNETH B. HAWKINS, of counsel.

JOHN A. BLOOMINGSTON, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

The main contention of counsel for defendant is that the judgment should be reversed because of plaintiff's failure to give prompt written notice of the accident to one of defendant's duly authorized agents, in accordance with the terms of the policy. The argument is, in substance, that the Shaw Co., insurance brokers, was the agent of plaintiff and not of defendant, that the written notice given to the Shaw Co. on

April 7, 1915, the day after the accident occurred, was not notice to defendant, and that the notice given by the Shaw Co., to defendant on August 15, 1916, more than a year and four months after the accident, was not a compliance with the terms of the policy and absolved defendant from all liability thereunder. Counsel for plaintiff states in his printed brief and argument here filed that the notice of the accident to defendant by the Shaw Co. on August 15, 1916, "was admittedly too long delayed," but counsel argues, in substance, that, although the Shaw Co. was the agent of the assured (plaintiff) in some matters, it was also the defendant's agent in other matters; that under the facts disclosed the Shaw Co. was defendant's agent in receiving notices of accidents, and its agent in receiving plaintiff's notice of April 7, 1915, and that such notice to the Shaw Co. was notice to defendant; and that, even if such notice be not considered as sufficiently prompt notice to defendant, its acts and conduct, after it received the notice of August 15, 1916, are such as, under all the circumstances, should estop it from disclaiming liability.

Although ordinarily an insurance broker is considered the agent of the assured and not of the insurance company, sometimes the actions of the company and its dealings with the broker create the relation of principal and agent between the company and the broker. In 22 Cyc. 1427, it is said: "A person may become authorized to bind the company as its agent not only by formal appointment as such agent, but also by being authorized by implication to act on behalf of the company in relation to its business; and in general persons who with the knowledge and assent of the company act for it in soliciting or procuring or contracting for insurance are held to be agents without formal appointment. The authority of the agent is often sufficiently indicated by the general

202    Appellate Courts of Illinois.

Boston Store v. Hartford Acc. & Indem. Co., 227 Ill. App. 192.

course of business in which he acts for the company, such course of business being known to the company and not objected to.'' It is well settled in Illinois that an insurance broker is sometimes the agent for the company in the delivery of policies and in the collection of premiums. (*Lycoming Fire Ins. Co. v. Ward,* 90 Ill. 545; *Frankfort, etc., Ins. Co. v. Lynch,* 156 Ill. App. 485; *Kuhlman v. Adkins,* 180 Ill. App. 611; *National Hotel Co. v. Merchants' Fire Assur. Corporation,* 183 Ill. App. 71.) In *Sun Mut. Ins. Co. v. Saginaw Barrel Co.,* 114 Ill. 99, 102, it is decided that correspondence between brokers and an insurance company, showing previous relations and methods of business in respect to insurance effected through their instrumentality, is proper evidence on the question of their being agents of the company; and that, where the brokers did not pay the premium to the company, although received by them from the assured, the question whether payment to them of such premium was a payment to the company, in view of their previous course of dealing with it, was one of fact to be determined by the court sitting as a jury. (See also *Lumbermen's Mut. Ins. Co. v. Bell,* 166 Ill. 400, 405; *Firemen's Ins. Co. v. Horton,* 170 Ill. 258.) In *Pringle v. Ætna Life Ins. Co.,* 123 Mo. App. 710, it is decided that, while generally an insurance broker is the agent of the assured and not the insurer, a broker may have his ordinary relations to the insurer enlarged, and that, if the custom in the business community is for the insurer to treat the broker who solicits the insurance as its agent in receiving premiums, notices of loss and summons in suits, the broker's acts within the limits of such custom binds the insurer. In this *Pringle* case it appears that Pringle, a contractor doing work in which others were employed, obtained a policy of liability insurance in the Ætna Co. through one Joseph Rush, who acted as a broker and who solicited the insurance from Pringle. One Mastin was

the general agent of the insuring company. Rush delivered the policy to Pringle, collected the premium and divided commissions with Mastin, taking the same out of the premium. When the accident happened to the employee, Pringle notified Rush and Rush notified the company, through Mastin. When suit was started the summons was served on Pringle and he delivered it to Rush, but the latter, instead of sending it to the company, or delivering it to Mastin, mailed it by mistake to another company, of which he was the agent. It was conceded that the subsequent delivery of the summons to Mastin was made at a time too late to constitute a compliance with the provisions of the policy. The court, in affirming a judgment in favor of Pringle for certain damages sustained in connection with said suit, made the decision above mentioned, and in the course of the opinion said (p. 713):

"If Rush was defendant's agent so as to bind it by receiving the summons from plaintiff, the agency must have arisen by some special circumstance or consideration which arose in the conduct of the particular business relating to this policy. The plaintiff * * * must have known that Rush was procuring the insurance as a broker. * * * But there is no reason why one who has acted as broker may not have his ordinary relations to the company from which he procures the insurance enlarged. * * * The defendant argues that, though the insurer permitted the broker to receive and transmit to it notices of accidents and suits thereon, it did not follow that his agency for that purpose was recognized. We think it does follow. Any other rule would be unjust and deceptive. Permitting such action to be taken is inviting it to be taken."

While in the present case there is no evidence of such a custom as was disclosed in said *Pringle* case, there is evidence of such a previous course of dealings, relating to insurance matters, between plaintiff and the Shaw Co. and between the Shaw Co. and de-

204    APPELLATE COURTS OF ILLINOIS.

Boston Store v. Hartford Acc. & Indem. Co., 227 Ill. App. 192.

fendant as tends to show, we think, that the Shaw Co. was considered by defendant as its agent in receiving notices of accident. The Shaw Co. kept a running account with defendant. When a party wanted a policy, such as defendant would write, the Shaw Co. would order it, receive it, deliver it to the assured, collect the premium, and place the amount in its own bank account, making monthly settlements with defendant. If the Shaw Co. received an application for such insurance as was written by defendant after its Chicago office had closed for the day, or prior to a holiday, the Shaw Co. was permitted to make the policy effective as of the next business day. If accidents occurred in plaintiff's business, covered by defendant's policy, it was plaintiff's habit or custom to send the notices to the Shaw Co., which in turn transmitted them to defendant. This habit or custom was known to defendant and it made no complaint but accepted the notices and acted upon them. If defendant desired to take up any question concerning plaintiff's policy it would always communicate with the Shaw Co. Both parties recognized the Shaw Co., so to speak, as a "go-between." The cases of *Hamm Realty Co. v. New Hampshire Fire Ins. Co.*, 80 Minn. 139 and *Warren v. Franklin Fire Ins. Co.*, 161 Iowa 440, may be cited as sustaining the proposition that a broker may be considered as the agent of the assured in some matters and also as the agent of the insurer in other matters, or sometimes as the agent of both parties. In the *Hamm Realty Co.* case (p. 142), it is said: "There is no doubt that a general insurance agency, representing a number of companies, may act as the representative of the insurer and the insured for the purposes above mentioned, or, in other words, be the agent for both parties, within the limits suggested. (Citing cases.) Such a business arrangement is in many cases adopted by business firms and corporations in cities, and is beneficial both to the underwrit-

ers and the parties insured—adding to the business of the one, and relieving the other from anxiety regarding the expiration and replacement of risks."
Our conclusion is that the finding of the trial court in the present case, on the question whether the Shaw Co. was authorized by defendant to receive for it the notice of April 7, 1915, of the accident, was fully warranted by the evidence.

This conclusion renders it unnecessary for us to discuss at length plaintiff's counsel's point as to estoppel or waiver. We may say, however, that, even if plaintiff's prompt notice of the accident, served on the Shaw Co. on April 7, 1915, be not considered as notice to defendant, we are of the opinion, under the facts disclosed, that defendant's acts and conduct after it received on August 15, 1916, the notice from the Shaw Co., were such as would prevent it from avoiding liability, because of lack of prompt notice, under the doctrine of estoppel or waiver. (*Cox v. American Ins. Co.*, 184 Ill. App. 419; *People's Fire Ins. Co. v. Pulver*, 127 Ill. 246; *Prentice v. Knickerbocker Life Ins. Co.*, 77 N. Y. 483.) We find no evidence of fraud on plaintiff's part in connection with the cancellation of the indorsement to the policy concerning chauffeurs' helpers, as suggested by defendant's counsel.

Counsel also call our attention to the fact that, while the amount of the finding and judgment is $3,304.25, the amount of plaintiff's *ad damnum* is only $3,100. We do not find that this point was brought to the attention of the trial court, and it cannot be taken advantage of for the first time in this Appellate Court. (*Grand Lodge, etc. v. Bagley*, 164 Ill. 340; *People v. May*, 276 Ill. 332.)

The judgment of the circuit court should be affirmed and it is so ordered.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.