Midwest Transfer Company of Illinois, Appellant, v. Preferred Accident Insurance Company of New York, Appellee.

Gen. No. 45,182.

Opinion filed January 9, 1951. Released for publication January 24, 1951.

MICHAEL A. GERRARD, of Chicago, for appellent.

HOWARD E. DeLONG, of Chicago, for appellee; E. C. F. MEIER, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff sues for an overpayment of $15,822.92, premiums on two policies of insurance issued by defendant against workmen's compensation, occupational diseases, property damages and personal injuries. It is not disputed that plaintiff paid $69,390.46 and that earned premiums computed according to the terms of the policies were $53,567.54. Defendant claims, however, that while according to the undisputed evidence, plaintiff paid this amount through H. E. Cotter & Co., Inc., neither H. E. Cotter nor H. E. Cotter & Co., Inc. (whom jointly we will call "Cotter") was its agent, and all that was transmitted to it by Cotter was the amount of $53,567.54. The only issue then is whether Cotter was the agent of defendant, authorized to collect premiums. This issue emerges from a melange of pleadings, motions for summary judgment, motions to strike, counterclaim for declaratory judgment, motion to strike the counterclaim, and technical objections and arguments tending to obscure a simple question and frustrate a just solution. After hearing the case without a jury, the trial court entered a judgment order finding that H. E. Cotter & Co. were brokers and acted solely for plaintiff, sustained defendant's counterclaim, and dismissed the suit.

The facts are that one Stamedis, a broker, brought Cotter, president of H. E. Cotter & Co., Inc., to see officials of plaintiff; that Cotter represented himself to be the agent of defendant; that negotiations followed, resulting in an agreement on a rate and on

initial deposits of $20,000 on the public liability policy and of $5,000 on the compensation policy. Thereupon Midwest issued its check for $25,000 dated May 29, 1946 and delivered it to Cotter. This check was made payable to "Preferred Accident & Indemnity Co.," instead of in the correct name of the company, "Preferred Accident Insurance Company of New York." Something is made of this point by defendant, but it is obvious from the record that this was a simple mistake and the point is not worth discussing. The check was indorsed in the name of the payee by Cotter, as agent, and then deposited to Cotter's account. On June 1, 1946, Cotter delivered the policies to plaintiff. On March 31, 1947, the policies were cancelled. In the meantime, plaintiff had paid additional premiums which brought the total amount paid by it up to $69,390.46. An audit made by defendant showed that the earned premiums amounted to $53,567.54, making an overpayment of $15,822.92, which is claimed by plaintiff.

In addition to the above, the evidence shows that the policies when delivered contained at their heads the printed word, "Agency" and a blank for the insertion of a name. That blank was filled in with the name of "H. E. Cotter & Co., Inc." The policies show that deposits of $20,000 and $5,000, respectively, were required as agreed upon between plaintiff and Cotter, yet at no time prior to cancellation thereof was any demand made by defendant for these deposits. Such demand would have revealed that plaintiff had given Cotter the check referred to, and that Cotter had deposited the check to his own account. During the entire period of time that the insurance was in effect, Cotter collected ·the premiums. Defendant kept an open account with Cotter and took for granted that Cotter would collect the premiums, deduct his com-

234

mission and transmit the balances. In other words, defendant had faith in Cotter and extended credit to him.

■ The evidence offered by defendant consisted of an opinion by defendant's cashier that Cotter & Co. were brokers, not agents, because, said he, the commission paid Cotter was not as large as that customarily paid agents. His testimony even on this point is by no means convincing. The manager of defendant's Chicago office also testified. He was not with the defendant at the time of the transaction in question, and we are unable to see any probative value in his testimony. The unsatisfactory evidence offered by defendant can hardly offset the facts proved by plaintiff. The manifest weight of the evidence was with the plaintiff.

■ ■ As this case will have to be retried, we desire to discuss some of the legal questions and some of the technical objections involved. In order to offset the damaging evidence that Cotter is shown as the agent in the policies, defendant objected to the introduction of those copies of the policies which were delivered to Cotter and by him to plaintiff, on the ground that these were not the originals, the originals being in the possession of defendant. Defendant did not claim there was any variance between these and the originals in its possession. The policies, or copies thereof, delivered to Cotter and by him to plaintiff stand as an admission by defendant of the facts therein recited, including that of the agency of Cotter. If those policies in possession of defendant show a different agent, it was their duty to produce them. It is a rule of evidence which ought to be invoked frequently to avoid legal bickering on trials, that where the evidence is entirely within the possession of one of the parties to a case, it is his duty to produce it and his

235

failure to do so raises a presumption against him. 20 Am. Jur., sec. 140; *Abhau v. Grassie,* 262 Ill. 636, 638; *Pipal v. Grand Trunk Western Ry. Co.,* 341 Ill. 320, 327, which cites *Mantonya v. Reilly,* 184 Ill. 183; *Warth v. Loewenstein & Sons,* 219 Ill. 222; and *Condon v. Schoenfeld,* 214 Ill. 226.

■ ■ We do not understand why a countercomplaint for declaratory judgment was filed. The purpose of such complaints is to declare the rights of parties before the accrual of an actual claim or before an irrevocable change of position of the parties, but here the issue made by the amended complaint and answer required a finding on the very issue sought to be determined by a declaratory judgment; that is, whether Cotter was the agent of the defendant. *Aetna Casualty & Surety Co. v. Quarles,* 92 F. (2d) 321. The motion to strike the counterclaim for a declaratory judgment should be allowed unless facts appear to the trial court which have not been presented to us.

■ ■ One of the points made by defendant relates to sec. 588, ch. 73, of the Insurance Act as it existed in 1946, which defines a broker as one who acts on behalf of the insured. This does not mean that one who is a broker or holds himself out to be a broker cannot be the agent of the insurance company for the purpose of collecting premiums. *Roy Iverson Co. v. United States Lloyds, Inc.,* 251 Ill. App. 150; *Hartford Accident & Indemnity Co. v. Mutual Trucking Co.,* 342 Ill. App. 174. Nor does it mean that defendant could issue policies requiring deposits of $25,000, arrange for their delivery to the insured, make no inquiry thereafter as to whether the deposits had been paid by the insured to the man who delivered the policies, keep an open account with the man who is alleged to be a broker and then seek to hold the insured when the default of the alleged broker is disclosed. *Lycoming Fire Ins. Co. v. Ward,* 90 Ill. 545; *Maltby v. Empire*

*Auto Ins. Ass'n*, 239 Ill. App. 532; *Roy Iverson Co. v. United States Lloyds, Inc.*, 251 Ill. App. 150; *Boston Store v. Hartford Accident & Indemnity Co.*, 227 Ill. App. 192. In the case of *Tri-City Transp. Co. v. Bituminous Casualty Corp.*, 311 Ill. App. 610, cited by defendant, the court said that whether a party acts as a broker or agent is determined not by what the party is called *but by what he does*. (Italics ours.) The broker in that case testified that he did nothing more than solicit plaintiffs for their business and that he could have placed it with any other company if he had desired. That is a far cry from the facts set forth in the instant case. Other cases cited by defendant are equally not in point.

Judgment reversed and cause remanded, with directions to the lower court to sustain the motion to strike the counterclaim for declaratory judgment and to retry the case on the issue of agency in accordance with the views herein expressed.

*Judgment reversed and cause remanded.*

Friend and Scanlan, JJ., concur.