In the Matter of Estate of Stanley Young, Deceased. Metropolitan Trust Company, Petitioner-Appellant, v. Ruth Young, Respondent-Appellee.

Gen. No. 45,607.

Opinion filed March 18, 1952.
Rehearing denied March 31, 1952. Released for publication April 1, 1952.

NASH, AHERN & McNALLY, of Chicago, for appellant; JOHN J. KENNELLY, and MARTIN J. McNALLY, both of Chicago, of counsel.

HEALY & STICKLER, of Chicago, for appellee; HAROLD STICKLER, WILLIAM P. KEARNEY, HEALY & STICKLER, all of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

On petition of appellant, Metropolitan Trust Company (hereinafter called petitioner), filed June 29, 1950, the probate court of Cook county expunged and vacated two orders: the first, entered March 20, 1950 *nunc pro tunc* as of May 8, 1947, discharging petitioner as adminstrator *de bonis non* of the estate of Stanley Young, deceased, and closing the estate; the second, entered June 8, 1950, reopening the estate and appointing Ruth Young, widow of deceased (hereinafter called respondent), administratrix *de bonis non*. On appeal the circuit court vacated and set aside the order of the probate court expunging and vacating these

prior orders and approved and confirmed the appointment of respondent and the issuance to her of letters of administration. Petitioner appeals.

September 10, 1940, letters of administration were issued to respondent. She became a resident of Connecticut. June 28, 1944 her resignation as administratrix was accepted and petitioner was appointed administrator *de bonis non*. May 8, 1947 petitioner filed its "final account" in the usual form and praying that the administrator be discharged. Emmet J. Cleary, attorney for the widow and only heir of the deceased father of Stanley Young (he survived his son), objected to the discharge of the petitioner and the closing of the estate, because of litigation in the United States District Court in which his client was endeavoring to obtain for the estate the interest of Stanley Young in the estate of his deceased grandfather. Cleary and Halbert O. Crews, attorney representing petitioner, agreed that petitioner should not be discharged and that the estate should remain open. They made no change in the account. They left the courtroom believing that the administrator had not been discharged, nor the estate closed.

The routine procedure in the probate court is as follows: An account is filed in the courtroom of the assistant to the judge of the probate court who approves current and final accounts. He endorses on the account a memorandum or minute of his findings and order. The account then goes into the office of the clerk of the court, where it is kept for about a week when it and the endorsements thereon are photostatted by county employees in another office. The photostats are sent back in book form, numbered and marked "Deceased Final Accounts and Orders in the Probate court of Cook county." These books are permanent records of the probate court. The original account is kept in the files of the estate. When the assistant judge makes

his order the clerk in his courtroom makes a minute of the order. This minute is entered in the clerk's docket at night. These minutes are retained about five months.

Petitioner's account was approved by Frederick B. Resag, assistant to the judge of the probate court. As shown by the photostatic Record Book No. 1325, he wrote on the account, "Notice to Counsel of Heirs. Notice to Creditors. All 1st, 3d & 4th Class Claims paid in full. Prorata share of 7th Class Claims paid. Estate exhausted as to time of filing this Final Account upon payment Cost of Administration Widow's Award & Claims set forth above. Costs paid to date. Final Account approved." He also stamped the account "Approved May 8, 1947, Probate Judge of Cook Co., Ill.," inserting between the date and title of office, "William F. Waugh, FBR." Some time after the account was photostatted he added to the above endorsement, on the same line and immediately after the words "Final Account approved," the following: "Adm W W A Disch." A similar notation appears in the clerk's docket immediately following the entry for May 8, 1947. It is contended that this notation in the docket is in different ink and in different handwriting than the other parts of the entry. By whom or when it was made does not appear. The entry in the docket, excepting the notation in controversy, is practically a verbatim copy of Resag's original endorsement.

May 19, 1949 the United States District Court decreed that the interest of Stanley Young in the estate of his grandfather descended to his heirs, legatees and devisees. This decree was affirmed by the circuit court of appeals and rehearing denied February 1, 1950. Certiorari was denied by the United States Supreme Court June 5, 1950. This interest may amount to $3,000,000. As these decisions were rendered the parties to this appeal became active.

October 5, 1949 an order was entered substituting Finn, Tollkuehn & Smith for Levinson, Becker, Peebles & Swiren (of which firm Crews is an associate) as attorneys for petitioner and directing that notice of all proceedings be given them. The appearance of the new attorneys for petitioner was filed the same day.

Cleary, a witness for respondent, who had returned to Chicago to re-establish her residence in Illinois, testified that in March 1950 he learned of the difference between the minute order on the final account and the photostatic record of the account; that respondent advised him that contrary to the information he had given her that the estate was open, the estate was closed; that a day or two later, on March 15, 1950, he examined the final account in the probate clerk's office and it was apparent that something had been added; that he ordered a certified copy of the final account and the next day made an additional order (the nature of this order is not shown), and an hour or so after the second order Resag called him on the telephone; that he went to Resag's courtroom, where the discrepancy and inconsistency in the orders on the final account and the photostatic record were discussed; that Resag, after talking with Crews on the telephone, told him, Cleary, that Crews said that Cleary was the only one objecting to the discharge of the administrator; that he, Cleary, said that was true, but "I withdraw my objections"; that he was then told by Resag to prepare a *nunc pro tunc* order; that Finn came in and Resag told Finn and Cleary to get together on some kind of an order and he would enter it; that on Monday, May 20th he took the *nunc pro tunc* order to Resag, who entered it and asked the witness to send a copy to Crews; that witness sent a copy to Crews that morning; he did not serve any notice about presenting the order of March 20th on Finn or anybody else. Crews testified that he had no notice or knowledge of the order of March 20,

263

1950 and had not seen a copy of it until the present proceedings were instituted. Finn denied that he talked with Cleary in Resag's courtroom. He testified that he came to Resag's office at the latter's request and was asked if he was present when the final account was presented; that he said "No" and suggested that Resag call Peebles' (Crews') office; that he left Resag's office, feeling they would call him if they wanted him for anything; that he did not receive a notice of the *nunc pro tunc* order and first learned about it from the president of petitioner some 60 days, or something, afterwards; that he was just guessing at that.

Resag testified that he had been approving current and final accounts in decedent estates since his employment by the clerk of the probate court May 1, 1947 (only a week before he passed on this account); that he had no independent recollection of the estate of Stanley Young, deceased, prior to March 1950; that he did not know when he added the words "Adm W W A Disch," but that he is sure he added it at a date later than when he entered the balance of the order; that an order approving a final account without actually discharging the administrator is not in his opinion a proper order and he believed that at some subsequent date someone—it may have been someone in the clerk's office—pointed out there had not been a discharge of the administrator, and he added the notation on the account; that he believed the final account in the Record Book 1325 of Final Accounts reflects the condition of the last page at the time he wrote on it May 8, 1947; that in amending the order of May 8, 1947 he had no written memorials before him other than the final account; that not earlier than March 15th Cleary showed him the photostat he had ordered and the original final account, and he saw the difference; that he told Finn and Cleary to get together, otherwise he would entertain a motion to go into the question as to how he

happened to make an addition to the order of May 8, 1947; that Cleary handed him the order (of March 20, 1950) and he asked if the parties agreed upon it, and Cleary replied "Yes"; that he signed the order; there was not any notice of the entry of the order that he knew about. There is a controversy as to whether Resag talked with Crews on the telephone on the day Cleary was first in Resag's office, or prior to the entry of the *nunc pro tunc* order.

The order entered was "on the court's own motion, it having come to the court's attention from the record and file in this case that, due to misprision, certain doubt, confusion and ambiguity exists as to the present status of this estate." After reciting the notice to heirs and creditors, payment of claims, exhaustion of estate as to time of filing the account, etc., stated in the original endorsement on the final account, the order reads: "It is hereby ordered, adjudged and decreed, *nunc pro tunc* as of May 8, 1947, upon good and sufficient memorials, including the order heretofore on May 8, 1947 entered in this cause: That the final account and report of Metropolitan Trust Company as Administrator De Bonis Non of the Estate of Stanley Young, Deceased, be and the same is hereby approved and confirmed; that the Metropolitan Trust Company is hereby discharged as the Administrator De Bonis Non of the Estate of Stanley Young, Deceased; and the Estate of Stanley Young, Deceased, is hereby closed."

■■ On June 6, 1950, the day following the denial of certiorari in the litigation in the federal courts, respondent, represented by Cleary's firm, filed her petition for the reopening of the estate of Stanley Young and the appointment of herself as administratrix *de bonis non*. On June 8, 1950 her petition was granted and an order entered appointing her administratrix. June 29, 1950, petitioner filed its petition asking that the orders of March 20, 1950 (*nunc pro tunc* as of

May 8, 1947) and June 8, 1950 be expunged from the records and vacated. Respondent answered and petitioner filed a reply. A hearing was had before the judge of the probate court, who found that no notice had been given of the entry of the *nunc pro tunc* order and granted the prayer of the petition. Respondent appealed. The parties stipulated that the case be heard in the circuit court on the transcript of proceedings in the probate court. The circuit court found that petitioner had actual notice through counsel of the *nunc pro tunc* order, denied the petition, and approved and confirmed the appointment of respondent and the issuance *to her* of letters of administration. The finding of the probate court is immaterial. The judgment before us is that rendered by the circuit court. *Barnes v. Earle,* 275 Ill. 381; *Schwartfager v. Schwartfager,* 330 Ill. App. 111. Since the testimony was not taken orally in open court in the circuit court, we may examine and pass upon the evidence *de novo. Warren v. First Nat. Bank of Columbus,* 149 Ill. 9, 20.

 The first question to be determined is the validity of the *nunc pro tunc* order. It is a final, appealable order. Unless it is void, not merely erroneous, it cannot be vacated on motion made more than 30 days after its entry. Petitioner contends that the order is void because it was entered without notice to petitioner or its attorneys, and because it attempts to create or supply an order as of May 8, 1947 which was in fact never made or entered. As said by the Second Division of this court in *City of Chicago v. Evon,* 339 Ill. App. 580, ''The only office of a *nunc pro tunc* order is to give effect to orders concededly entered. A court cannot, under the guise of correcting its record, put upon it an order or judgment which never in fact had been made or entered.'' In *Wesley Hospital v. Strong,* 233 Ill. 153, the court said:

266

"The fact that a particular order has been made by the court at a previous term, if it is not of record, can only be shown 'by the production of some note or memorandum from the records or *quasi* records of the court, or by the judge's minutes, or some entry in some book required to be kept by law, or in the papers on file in the cause. It cannot be determined from the memory of witnesses or by the recollection of the judge himself.' (Citations.)

. . . It is manifest that a note or memorandum which would authorize the amendment of the record made at a previous term must be a note or memorandum which was made during that term, otherwise the rule would amount to nothing."

These principles are no longer debatable. The burden of establishing these prerequisites to the proper entry of an order *nunc pro tunc* rests upon the party relying upon the order. In the probate court, in the absence of a draft order, the orders entered on the approval of final accounts are not expanded or recorded, other than the entries in the clerk's docket. In this case the entry in the docket is practically a verbatim copy of the judge's minutes (Resag's endorsement) appearing on the final account. The photostat of the final account, a permanent record of the court, shows that the notation in the judge's handwriting, "Adm W W A Disch," was not on the account when the photostat was made, about a week after the presentation of the account and its approval by the court. The person who made the notation testified that he made it at some unremembered time after May 8, 1947. This statement is corroborated by the testimony of Crews and Cleary and the conduct of all interested parties. The testimony was competent. *Gillett v. Booth,* 95 Ill. 183; *Bolter v. Kozlowski,* 211 Ill. 79. As

267

stated in the case last cited, the court has inherent power to protect its records against fraud and unauthorized interference by the insertion of evidence not offered or orders not made. In this case there is no charge of fraud. The court is satisfied that Resag made the addition to his original minutes of May 8, 1947 in an innocent but unauthorized effort to correct what he considered was a mistake on his part by adding an order which had not in fact been entered. No prior order having been entered discharging the administrator and closing the estate, the *nunc pro tunc* order should not have been entered. The order, however, was not for this reason void. The court had jurisdiction of the subject matter—the estate of which petitioner was administrator. If it also had jurisdiction of petitioner for the purpose of amending the record, it had the power to determine whether or not the *nunc pro tunc* order should have been entered. Its error in deciding the question did not render the order void. *Anderson v. Anderson,* 380 Ill. 435.

 A *nunc pro tunc* order amending a final order, judgment or decree at a subsequent term or after 30 days from the entry of such order, judgment or decree, under the present Practice Act, is void if entered without notice. In *Swift v. Allen,* 55 Ill. 303, an action of ejectment, plaintiffs claimed under an attachment, judgment and execution against Lee, the defendant, under a conveyance from him before the attachment was levied. Plaintiffs sought to impeach the conveyance to defendant as having been made to defraud creditors. Defendant insisted that a former decree of the court rendered in a suit brought by plaintiffs against defendant for the purpose of setting aside defendant's title, was conclusive. By the decree the bill was dismissed on hearing. At a subsequent term, on motion, the decree was amended by adding, "Upon the ground that a court of law is the proper forum in

which to try and determine the matters in controversy in this suit.'' The amendment changed the decree to a dismissal without prejudice. The court held that the amendment was made without notice, and said:

''The amendment having, then, been made without notice to the defendant in this suit, it is, as to him, a nullity. The court acted without jurisdiction. It could no more impair his rights by an order made in the guise of an amendment, without first bringing him before the court, than it could do so by pronouncing a new decree. The order making the amendment was not merely erroneous, as suggested by counsel. It was absolutely void, for want of jurisdiction, and can be assailed in a collateral as well as in a direct proceeding.''

See also *Gillett v. Booth, supra,* and *Michael v. City of Mattoon,* 172 Ill. 394. In these cases the court had lost jurisdiction at the expiration of the term at which the original judgment or decree was entered.

██ ██ In the instant case the order of May 8, 1947 merely approved the final account. It was not until the entry of the *nunc pro tunc* order on March 20, 1950 that the administrator was discharged and the estate closed. The court had jurisdiction of the subject matter—the estate of Stanley Young, and of petitioner as administrator, for general purposes. Rule 60 of the probate court provides:

''Except when a motion or claim is called for hearing on the Contested Calendar or the Claim Calendar, no motion will be heard or order entered without notice to the following:

(1) to the executor, administrator, conservator or guardian;

(2) to the party respondent to the motion; . . . .''
This rule was made to facilitate the orderly disposition of the business of the court and to protect the

parties against orders entered without their knowledge. The rule has the force of a statute and is binding alike on the court and parties. An order entered in violation of the rule is a nullity and may be set aside at a subsequent term. *North Ave. Building & Loan Ass'n v. Huber,* 286 Ill. 375, 383.

■ Respondent contends that the application to vacate the *nunc pro tunc* order, having been made more than 30 days after its entry, is a collateral attack on the order (citing *Barnard v. Michael,* 392 Ill. 130), and that under the authority of *Cullen v. Stevens,* 389 Ill. 35, and other cases cited by her, the alleged want of jurisdiction must appear upon the face of the record and cannot be shown aliunde. When an order, judgment or decree is attacked for want of notice and opportunity to appear in opposition to its entry, evidence dehors the record is competent. *Caswell v. Caswell,* 120 Ill. 377; *Howard v. Howard,* 304 Ill. App. 637. These cases are exceptions to the general rule. *Steffens v. Steffens,* 408 Ill. 150. Here petitioner's application to vacate the *nunc pro tunc* order is based on want of notice and opportunity to be heard. The oral testimony offered and received was competent.

■ ■ The *nunc pro tunc* order contains no recital of notice to or jurisdiction of petitioner. There was no evidence that notice was given. Resag says he relied on Cleary's statement that the parties agreed to the order. There is no competent evidence of such an agreement. Cleary was not examined as to the alleged agreement. Finn's testimony is a denial of it. Crews ceased to represent petitioner October 5, 1949. The order is void for want of notice to petitioner. There is no evidence that petitioner knew of the entry of the order prior to June 23, 1950, the date stated in the petition to vacate. That petition was filed in apt time.

■ ■ In procuring the entry of the *nunc pro tunc* order Cleary was representing respondent. He

started his investigation of the probate court records because of her representation to him that the estate was closed. His firm filed a petition for her appointment as administratrix *de bonis non* and became attorneys for her as administratrix. Cleary testified that his firm could have represented respondent March 20, 1950, when the order was entered; that Mr. Aiken took care of that end of it and he, Cleary, would not know. When Cleary's firm became her attorneys was peculiarly within respondent's knowledge. If Cleary did not represent her when the order was entered, she should have proved that fact. *Midwest Transfer Co. v. Preferred Acc. Ins. Co.*, 342 Ill. App. 231. She was a party to the entry of the order. Vacation of the *nunc pro tunc* order was necessarily followed by vacation of the order appointing respondent administratrix. The amendment of petitioner's charter to allow it to "carry on a general trust business in all its branches, but only to the extent reasonably necessary for the purpose of accomplishing the orderly liquidation of the trust business presently conducted by the corporation," does not disqualify petitioner to complete the administration of this estate.

The decree of the circuit court is reversed and the cause remanded with directions to vacate and expunge the orders of March 20, 1950 and June 8, 1950, and to enter such other and further orders consistent with this opinion as may be deemed necessary or advisable.

*Reversed and remanded with directions.*

BURKE, P. J. and FRIEND, J., concur.