Richard F. Moone, Appellant, v. Commercial Casualty Insurance Company, Appellee.

Gen. No. 45,850.

Opinion filed April 22, 1953. Rehearing denied and opinion modified June 3, 1953. Released for publication July 3, 1953.

HUGH M. MATCHETT, of Chicago, for appellant; RICHARD F. MOONE, *pro se,* of counsel.

SAMUEL LEVIN, of Chicago, for appellee; JOHN D. POPE, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is the second appeal in an action to recover disability benefits of $725 under the Chicago Bar Association Group Disability Policy of Insurance. The first appeal was from a judgment for the defendant after dismissal of the complaint. This court decided the complaint stated a cause of action, and the judgment was reversed and the cause remanded for trial. *Moone v. Commercial Casualty Ins. Co.,* 342 Ill. App. 596. The trial was by the court without a jury and finding and judgment were for the defendant. Plaintiff has appealed.

Plaintiff's application for enrollment in the Policy was dated August 3, 1949. The Certificate of Insurance was issued to plaintiff, a lawyer, effective August 15, 1949. A copy of the application is impressed on the Certificate. The following questions and answers appear above plaintiff's signature:

"7. Have you been disabled by either accident or illness or received medical attention during the past five years? Yes. When? July 1945. Duration? 3–4 weeks. For what? suspected ulcer

"8. Are you now to the best of your knowledge in sound condition physically and mentally? yes– no disability in last 4 years"

Plaintiff has practiced law since 1938. It was about that time he began to suffer from a stomach ulcer. Early in July 1949 he called Parker, Aleshire & Company, defendant's Chicago agent, about enrollment in the Chicago Bar Association Group Policy. About July 10 Merlin W. Hughes called upon him and after a conference, plaintiff signed in blank two application forms. One was for use in the event plaintiff was acceptable in regular course, and one in the event that he was acceptable during an "open period," when applicants otherwise unacceptable are accepted. Plaintiff heard

331

nothing further until the Certificate of Insurance arrived August 22, 1949.

Between July 29 and August 14, 1949, plaintiff went on vacation, was badly sunburned and suffered stomach distress. August 16 he had a severe attack of stomach illness and a couple of days later was advised by a doctor that he had a duodenal ulcer with obstructions due "stenosis" and that his life was in danger unless he submitted to an operation. August 24 he had a worse attack and entered the hospital where a section of his stomach was removed. He resumed his practice of law in November.

After he received the Certificate on August 22, he called Parker, Aleshire & Company, referred to herein as Company, telling them that the application bearing his signature was mistaken in the answer "suspected ulcer." A representative of that Company called on him and after discussing plaintiff's health record with him asked for a return of the Certificate. Plaintiff refused to turn over the Certificate, and on September 1, 1949 formally claimed the benefits. September 22 the defendant, herein called insurer, wrote him that it was recalling the Certificate because of incorrect information; that the Certificate would not have been issued had the Company then had the correct information; and in the letter enclosed currency equal to amount paid for the premium. September 24 plaintiff responded rejecting the tender, claiming a valid insurance contract, and stating that he had given insurer's agent a complete medical history when signing the blank applications. October 4, the insurer wrote again reasserting that the Certificate was issued on admittedly incorrect information in an application signed by plaintiff and disagreed that the Certificate represented a valid contract.

The insurer's answer set up alternative defenses: (1) That Hughes was an independent broker, agent for

plaintiff and not insurer, with no authority to bind insurer with conversations; that insurer had no knowledge of plaintiff's condition of health, except that which appeared on the application; that the Certificate was issued on that knowledge and would not have been had insurer known plaintiff's true condition; that the application contains false representations about plaintiff's health; that the application was filled out, accepted and ratified by plaintiff; and that insurer is not liable. (2) That the Certificate and endorsements contain the entire contract and that under the terms of the Certificate of Insurance no agent had the authority to change the terms or waive provisions, and no change should be effective unless approved by a company executive and the approval endorsed upon the Certificate. Plaintiff replied that Hughes was not his agent but was insurer's; denied making false representations; and denied lack of insurer's knowledge of his health.

The trial court found that plaintiff told Hughes the truth about his health record and condition; that the misrepresentation about plaintiff's condition was a material one; and that Hughes was not the agent of the insurer.

The finding that plaintiff told Hughes the truth about his health record and condition is not challenged by either party. It is uncontroverted that Hughes had plaintiff sign two blank applications and that the one upon which the Certificate issued was filled out by Hughes. Since the answer "suspected ulcer" is admittedly incorrect, it follows the error is attributable to Hughes. We infer that this conclusion applies as well to the answer "no disability in last 4 years," insofar as this answer is considered to be erroneous. We infer from the ultimate finding that plaintiff told the truth that the court believed that plaintiff told Hughes the last time he had been unable to work, because of the

ulcer, was in 1945. This statement clarifies the meaning which Hughes and plaintiff gave to the term "disability" which Hughes used in answering the question with respect to plaintiff's condition.

██ A vital issue is whether Hughes was the agent of the insurer or the broker of plaintiff.

The competent evidence on this issue was: that plaintiff was referred by the Chicago Bar Association to the Company with respect to the Group Policy; that the Company is the insurer's general agent in Chicago; that the plaintiff telephoned the general agent for information and was told someone would call on him; that shortly thereafter Hughes called on him saying he was from the Company; that plaintiff had not previously known Hughes; that the application form signed by plaintiff carried only insurer's name; that about 6 weeks after his conference with Hughes plaintiff received a Certificate of Insurance and the bill for the premium; and that he sent his premium check to the Company.

There was further testimony on this issue that Hughes was a licensed broker and agent, but not for insurer, at the time of the transaction; that he used a desk and telephone without charge at the Company; that the building directory carries his building address as the suite occupied by that Company; that he was told by that Company to contact plaintiff; that when the Company receives inquiries about Chicago Bar Association Group Policies it sometimes sends salaried employees and sometimes Hughes to interview prospects; that Hughes received his commission from the Company and was obligated to place plaintiff's insurance with the insurer; and that after plaintiff received his Certificate and notified the Company of the error in the application, the Company sent its employee, Ernest Luehr, to discuss it with him.

The further testimony on the issue is that Hughes was not licensed as solicitor for the Company; that he was not an employee or agent of the Company; and that Hughes filled in the application which had been signed by the plaintiff but did not deliver the Certificate to plaintiff or collect the premium.

██ The state licenses issued to Hughes and the certificates of the Director of Insurance of the State of Illinois stated that Hughes had no agent's license to represent insurer nor a solicitor's license to represent the Company, and were *prima facie* evidence of the facts stated in them. (Chap. 73, par. 1017, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 66.1080].) These documents are not controlling, however, with respect to the status of Hughes in this case. Whether he was a broker or agent is determined not by what he is called, but by what he does. *Midwest Transfer Co. v. Preferred Acc. Ins. Co.*, 342 Ill. App. 231. Whether Hughes was the agent of plaintiff or insurer, so as to charge one or the other with responsibility for the answers in the application, depends upon who first set him in motion, who could control his action, who is to pay him and whose interest was he there to protect. Mechem, Outlines of the Law of Agency, § 117 (3rd ed., 1923).

██ The only reasonable inference from the testimony is that the Company, insurer's general agent, set Hughes in motion. Hughes testified that his actions as broker were controlled, for he was compelled to place plaintiff's application with the Company for the insurer. *Midwest Transfer Co. v. Preferred Acc. Ins. Co.*, 342 Ill. App. 231. Furthermore, it is admitted that the Company paid Hughes a commission for soliciting the application. Finally, the more reasonable inference from the testimony is that Hughes was there to protect the Company. This is so notwithstanding the fact that he made out the application incorrectly. He was

there at the direction of the Company and his interest in filling out the application as he did was to succeed in the mission. In view of the "open period" policy of the insurer, what Hughes did is diminished in importance so far as the acceptance of the risk is concerned.

 We agree with the rule in *Sommerio v. Prudential Ins. Co.*, 289 Ill. App. 520, cited by insurer, that the power of an agent can be proved only by tracing it to the source of his alleged authority, i. e., his principal, and not merely by the testimony of the alleged agent. Both Donald W. Aleshire and Hughes testified that Hughes had never been an employee, solicitor or agent of the Company, and that he acted as broker. This testimony was not competent, is unsatisfactory and is not convincing in the light of the facts. *Midwest Transfer Co. v. Preferred Acc. Ins. Co.*, 342 Ill. App. 231. We think it is unrealistic to consider Hughes as a broker in the sense of a middle man soliciting insurance with no employment by any special company, placing the insurance with a company selected by the applicant or broker. *City of Chicago v. Barnett*, 404 Ill. 136. An insurance broker, like any broker, is the agent of the person that employs him. *City of Chicago v. Barnett*, 404 Ill. 136. We think, in the broad sense, Hughes was an employee of the Company.

 We agree with plaintiff that if Hughes was not expressly authorized to act as agent of the Company the trial court should have found he was held out as agent of the Company and his actions, under this apparent authority, were binding on insurer. *Haugens v. Foster*, 320 Ill. App. 212; and *Boston Store v. Hartford Acc. & Indem. Co.*, 227 Ill. App. 192.

 We think that though there is no conflict in the evidence it might be said that inferences favorable to defendant could be drawn from the licenses and certificates and reasonable men could arrive at different conclusions on the issue of whose interest Hughes was

there to protect. On all the evidence, however, we think the court's finding that Hughes was not the agent of the insurer is against the manifest weight of the evidence. We find that Hughes, whether he was properly licensed or not, was the agent of the insurer in this transaction.

 In view of our conclusion that Hughes was the agent of the insurer, we need not consider whether the trial court erred in finding that the misrepresentation is a material one; neither need we discuss this finding in the light of the "open period" policy of the insurer.

 Insurer had notice through Hughes at the time plaintiff applied for the insurance of plaintiff's medical history and condition and is estopped from defeating plaintiff's claim because of incorrect information in the application which is attributable not to plaintiff but to insurer's agent. *Nogulich v. Metropolitan Life Ins. Co.*, 317 Ill. App. 411.

 On the basis of our findings we are constrained to reverse the judgment of the trial court. We have authority to make the finding and reverse the judgment without remanding for new trial though it might be said that conflicting inferences could be drawn from the testimony. *Levinson v. Spector Motor Service*, 389 Ill. 466 and *Ebbert v. Metropolitan Life Ins. Co.*, 369 Ill. 306.

 We think there is no merit in plaintiff's contention that insurer's refusal to pay the claim was vexatious and without reasonable cause and that this court should allow the insured reasonable attorney fees under par. 767, chap. 73 (Ill. Rev. Stat.) [Jones Ill. Stats. Ann. 66.830]. The insurer had to decide for itself the question of the agency or ostensible agency relationship before it paid the claim. There was also the question of whether the misrepresentation was material. The fact that the trial court held for the insurer

on two occasions is some indication of the reasonableness of the refusal to pay the claim. We think there is no showing that the delay in payment was vexatious.

For the reasons given the judgment is reversed with direction that the trial court enter judgment for the amount of the claim.

*Reversed with direction.*

LEWE, P. J. and FEINBERG, J., concur.