GEORGE EMMONS, PLAINTIFF, v. ELIPHALET B. STILL-WELL, ADMINISTRATOR OF THE ESTATE OF ALDEN D. APPELGET, DECEASED, AND THE COUNTY OF OCEAN, DEFENDANTS.

ANNIE BELL HILL, PLAINTIFF, v. ELIPHALET B. STILL-WELL, ADMINISTRATOR OF THE ESTATE OF ALDEN D. APPELGET, DECEASED, OCEAN COUNTY (NEW JERSEY) AND GEORGE H. EMMONS, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 23, 1959.

Civil action. On motion.

*Mr. Harold Lipsky,* attorney for plaintiff Annie Bell Hill.

*Mr. Harold A. Schuman (Messrs. Haines & Schuman),* attorney for plaintiff George Emmons.

*Mr. J. Elmer Matthews,* attorney for defendant Eliphalet B. Stillwell.

*Mr. Henry H. Wiley (Messrs. Berry, Whitson & Berry),* attorney for Ocean County.

*Mr. Robert A. Lederer,* attorney for defendant George H. Emmons.

LARRABEE, J. C. C. (temporarily assigned). The suit resulted from an auto accident. The jury returned a verdict in favor of plaintiff Annie Bell Hill and Eliphalet B. Stillwell, administrator of the estate of Alden D. Appelget,

deceased, and against George H. Emmons on October 1, 1959. Judgment was entered on October 6, 1959.

On October 13, 1959 attorney for defendant filed a notice of motion for a new trial. The notice was dated October 6, 1959 and was mailed to the adversaries on that date. The notice was returnable November 13, 1959.

On October 26, 1959 the attorney for defendant Emmons sent a letter to the trial judge, with copies to the court clerk and to adversary counsel, stating that he was unable to obtain from the court reporter a transcript of the testimony since the reporter had sustained a heart attack. The letter continued:

"In the meantime, and in anticipation of Mr. Donegan's absence, I will, of course, request a continuance of the matter, and will request a date after I have ascertained more accurately when it would appear the transcript will be available."

On October 30, 1959 counsel for plaintiffs wrote the court, with copies to the clerk and defendant's counsel, advising that they would appear on the return date and asking that no continuance of the original motion be granted until plaintiffs' counsel could be heard. Meanwhile, counsel for the plaintiffs on November 5, 1959 and November 6, 1959 filed motions to dismiss the original motion.

Both matters came on for hearing on November 13, 1959 and the court proceeded to hear the motion of plaintiffs' counsel first. The contentions of plaintiffs' counsel were that the motion for a new trial should be dismissed because there never had been entered an order extending the time as permitted by *R. R.* 4:61–2.

The rule provides that the motion must be served not later than ten days after the entry of the verdict of the jury. The verdict of the jury was entered October 1, 1959 and the notices of motion were mailed October 6, 1959, well within time.

However, the rule further provides that "The motion shall be noticed for hearing and shall be argued no later than

the second regular motion day following the service thereof, unless the court for good cause shown shall order the hearing fixed for either an earlier or a later date."

October 16, 1959 was the second regular motion day following the service of defendant's motion; consequently the first action by defendant's counsel to extend the date for argument in the form of a letter dated October 26, 1959 was sent ten days after the date specified by the rule for argument had passed.

Plaintiffs' counsel, of course, knew that defendant's counsel intended not to make the application before November 13, 1959, because the notice which was mailed to them on October 6, 1959 apprised them of that fact, but they did not act until they received the letter of October 26, 1959, wherein defendant's counsel indicated he would seek a further delay.

■ Counsel for plaintiffs contend that, under *R. R.* 1:27B(c) the court has no power to extend the time. However, the obvious application of *R. R.* 1:27B(c) is to the ten-day period, because with regard to the hearing date the court is expressly given the power to extend the same. It should be noted that the available cases decided with reference to the rule refer to the ten-day limitation and not to the date for argument.

■ The court has no difficulty in determining that it has the power and the right under *R. R.* 4:61-2 to defer the date for argument. The problem here is, does the court have the right to enter a *nunc pro tunc* order extending the date for argument and, assuming that it has that right, should it exercise it because good cause has been shown?

The court has indicated a standard by which the present issue can be evaluated. Where the application for a new trial had been argued long after the verdict, the court said that the delay might be fatal were it not for the substantial amount involved, the grave injury to the plaintiff in such a course and the equal responsibility of counsel for both

parties to have acted or insisted upon action in compliance with the rule. *Kazanjian v. Atlas Novelty Co.,* 34 *N. J. Super.* 362, 366 (*App. Div.* 1955).

Otherwise, the New Jersey cases do not provide much in the way of helpful guideposts regarding *nunc pro tunc* orders.

" '*Nunc pro tunc*' is a phrase used to express that a thing is done at one time which ought to have been performed at another * * * It * * * can never be invoked to change a legal status. When the court causes delay in the entry of a judgment or order, an entry will be allowed *nunc pro tunc* as of the time when the party would otherwise have been entitled to it. *St. Vincent's Church, Madison v. Borough of Madison,* 86 *N. J. L.* 567 (*E. & A.* 1914). There may be cases in which the parties are entitled to have such an entry made when they themselves have caused delay but never so as to disturb a status or impair rights." *Rinehart v. Rinehart,* 91 *N. J. Eq.* 354, 356 (*Ch.* 1920).

Outside of New Jersey, *nunc pro tunc* orders are permitted, but guardedly. In Ohio it would be permitted only where judicial action had actually been taken and to supply omissions in exercise of clerical functions. *Helle v. Public Utilities Commission,* 118 *Ohio St.* 434, 161 *N. E.* 282 (*Sup. Ct.* 1928).

The Ohio case also states that where extraneous evidence is needed to determine clerical error, notice and hearing are required. To the same effect is *In re Young's Estate,* 346 *Ill. App.* 257, 104 *N. E. 2d* 850 (*App. Ct.* 1952).

The comment from *C. J. S.* follows:

"57. *Nunc Pro Tunc* Orders Generally—
The power to make a *nunc pro tunc* order should be exercised cautiously and as justice requires. Its office is to speak what has been done, not to create; it cannot supply a jurisdictional defect by requiring something to be done which has not been done. * * *
* * * it may properly be entered only when the error or errors to be corrected have not been due to the fault of the party who seeks such an order." 60 *C. J. S., Motions and Orders,* § 57, *p.* 54.

"(a) In general
An order may generally be entered *nunc pro tunc* to correct the entry of an order, previously made, not speaking the truth as to

what was actually done, or to make a record of what was previously done by the court and not then entered.

\* \* \* \* \* \* \* \*

(b) Necessity of Previous Order or Action

"The entry of an order *nunc pro tunc* may not serve to supply the Court's nonaction, or to supply an order which it failed to make." 60 *C. J. S. Motions and Orders,* § 59, *pp.* 58, 60.

"*Nunc pro tunc* order. The court may enter an order of dismissal *nunc pro tunc* so as to make the record speak the truth, but it cannot enter as now for then an order which in fact was not previously made." 27 *C. J. S. Dismissal and Nonsuit* § 72, *p.* 471.

Some jurisdictions, apparently in the minority, take a more liberal approach. In New York, the court may enter a *nunc pro tunc* order to correct a record or in furtherance of justice where the failure to enter was due to an accident or excusable oversight or mistake. *Karpuk v. Karpuk,* 177 *Misc.* 729, 31 *N. Y. S. 2d* 769 (*Sup. Ct.* 1941). See 28A *Words and Phrases Nunc Pro Tunc, pp.* 779, 793.

To enter a *nunc pro tunc* order would be extending the time after the right had expired due to the limitation. Consequently, rights are affected.

Where time for taking an appeal has run the parties to a judgment have a vested right therein which cannot subsequently be taken from them. *In re Pfizer's Estate,* 6 *N. J.* 233 (1951).

The court, in many cases, could approach the problem from the position that it should now, at a late date, consider whether or not good cause existed at the time the limitation expired. Such cases could be the indisposition of the court or counsel that rendered action impossible. But here the defendant could have made an application to extend the time for hearing and did not. His reason is that he was not able to obtain a transcript. However, he had the opportunity to make the application and instead, by noticing the matter for a late date, acted as though the court had or would make the order of extension.

The inability of the reporter to provide a transcript does not excuse counsel from the need to apply for an order extending the time, nor from the need to act timely and

prior to the expiration of the extension date. There is no reason offered why counsel did not or should not have applied for an order before the second motion day. By his unwarranted delay he incurred the problem of obtaining an order *nunc pro tunc* and the practice with regard to such orders, as above stated, requires a denial of his request.